**SO ORDERED.**

**SIGNED this 19th day of November, 2015.**



_Lena Mansori James_
LENA MANSORI JAMES
UNITED STATES BANKRUPTCY JUDGE

---

### UNITED STATES BANKRUPTCY COURT
### FOR THE MIDDLE DISTRICT OF NORTH CAROLINA
### WINSTON-SALEM DIVISION

| | | |
|---|---|---|
| IN RE: | ) | |
| | ) | |
| Queenesther Ruth Jeffries, | ) | Case No. 14-50656 |
| | ) | |
| Debtor. | ) | Chapter 7 |
| _____ | ) | |
| | ) | |
| William P. Miller, United States | ) | |
| Bankruptcy Administrator, and | ) | |
| W. Joseph Burns, Trustee | ) | |
| | ) | |
|      Plaintiffs, | ) | Adv. Pro. No. 14-6036 |
| v. | ) | |
| | ) | |
| Queenesther Ruth Jeffries, | ) | |
| | ) | |
|      Defendant. | ) | |
| _____ | ) | |

## <u>MEMORANDUM OPINION</u>

This adversary proceeding came on before the Court for trial in Winston-Salem, North Carolina on September 1, 2015 on a Complaint Objecting to Discharge. After considering the pleadings, evidence, and arguments of counsel, this Court makes the following findings of fact and conclusions of law pursuant to Rule 7052 of the Federal Rules of Bankruptcy Procedure:

<u>S</u><u>TATEMENT OF THE</u> <u>C</u><u>ASE AND</u> <u>J</u><u>URISDICTION</u>

The United States Bankruptcy Administrator and the Chapter 7 Trustee (the "Plaintiffs") object to discharge of Queenesther Ruth Jeffries (the "Debtor") in her Chapter 7 case. The Plaintiff has asserted two claims: (1) that the Debtor knowingly and fraudulently made a false oath or account in connection with her case and should be denied a discharge under 11 U.S.C. § 727(a)(4)(A); and (2) that the Debtor, with intent to hinder, delay or defraud a creditor or an officer of the state charged with custody of property under Bankruptcy Code, transferred, removed, or concealed property within one year of the filing of the petition, so that her discharge should be denied under 11 U.S.C. § 727(a)(2)(A). This Court has jurisdiction over the subject matter of this proceeding pursuant to 28 U.S.C. §§ 1334 and 157(a) and Local Rule 83.11 entered by the United States District Court for the Middle District of North Carolina.  This is a core proceeding under 28 U.S.C. § 157(b)(2), which this Court may hear and determine.

<u>F</u><u>ACTUAL</u> <u>B</u><u>ACKGROUND</u>

Prepetition, the Debtor met with her bankruptcy counsel, or his assistant, on three occasions. First, the Debtor and her brother, George T. Powell ("Mr. Powell"), met with the Debtor's bankruptcy counsel in April 2014 to discuss a judgment entered against the Debtor in 2009.  The Debtor next met with her counsel's assistant in May 2014 to provide information for her bankruptcy schedules.  Finally, in June 2015 the Debtor met with her counsel for the purpose of reviewing and signing her schedules and statements prior to filing her Chapter 7 petition. The Debtor then filed a voluntary petition under Chapter 7 of the Bankruptcy Code on June 12, 2014 (the "Petition Date"), along with her schedules and Statement of Financial Affairs ("SOFA"). W. Joseph Burns was appointed as Chapter 7 Trustee (the "Trustee").

The Debtor's schedules reflect the following:

- On Schedule A, the Debtor lists real property consisting of two grave plots with a total value of $200.00.

- On her Schedule B, she lists checking and savings accounts with Allegacy Federal Credit Union with a total value of $100.00, a checking account with PNC Bank with a value of $100.00, and a checking account with Wells Fargo Bank, N.A., also with a value of $100.00. She lists various household items with a total value of $1,600.00, a 401(k) account with Macy's of unknown value, and two vehicles, a 2008 Honda valued at $9,000.00 and a 2010 Mazda valued at $12,000.00.

- The Debtor lists two secured claims on Schedule D, one with Ally Financial in the amount of $13,486.00, secured by a 2008 Honda CRV, and another with SunTrust Bank in the amount of $13,140.09, secured by a 2010 Mazda.

- On Schedule E, the Debtor lists two priority debts, one with the IRS in the amount of $13,872.39 for taxes from 2009 through 2012, and another with the North Carolina Department of Revenue in the amount of $2,378.10 for 2011 and 2012 taxes.

- The Debtor lists eight unsecured nonpriority claims in Schedule F. Seven debts are for medical services, credit cards, and a personal loan, totaling $19,427.46. The eighth claim is a judgment against the Debtor held by Mercedes and Edward Miller in the amount of $161,000.00, noted as a business debt.

On her SOFA, the Debtor checked the box indicating "None" to question 10, "Other transfers." This question states in part:

> List all other property, other than property transferred in the ordinary course of the business or financial affairs of the debtor, transferred either absolutely or as security within **two years** immediately preceding the commencement of this case.

In addition, the Debtor checked the box indicating "None" to question 18, "Nature, location and name of business." Subsection (a) of this question requests the following information:

> *a. If the debtor is an individual,* list the names, addresses, taxpayer identification numbers, nature of the businesses, and beginning and ending dates of all businesses in which the debtor was an officer, director, partner, or managing executive of a corporation, partner in a partnership, sole proprietor, or was self-employed in a trade, profession, or other activity either full- or part-time within six years immediately preceding the commencement of this case, or in which the debtor owed 5 percent or more of the voting or equity securities within **six years** immediately preceding the commencement of this case.

Other than the amended Schedule J filed five days after her Petition Date, the Debtor has not filed amended schedules or statements during the pendency of this case.

The Debtor's case was randomly selected for audit on July 1, 2014 pursuant to 28 U.S.C. § 586(f)(1) (2012).  The Administrative Office of the United States Courts filed a Report of Debtor Audit ("Report") on September 2, 2014 stating that there were no material misstatements in the Debtor's petition, schedules, and statements.  While the Report noted that there were no material misstatements, by separate letter to the Bankruptcy Administrator ("BA") of the same date, the auditor listed omissions from the Debtor's schedules and statement as follows:  (1) a partnership known as "Dollars, Sense and Growth Investment;" (2) GQM Enterprises, LLC ("GQM") as a possible business affiliation of the Debtor; (3) one Wells Fargo savings account #9886; and (4) two PNC bank accounts, #2779 and #2787.

After the first § 341 meeting,[1] the Trustee requested a title search to determine whether the Debtor had any interest of record in her residence or in a rental property owned by her husband.[2]   The title search reflected that the Debtor was not listed on the deed for either of those properties; however, it revealed that the Debtor had transferred an interest in real property located at 2537 N. Liberty Street, Winston-Salem, North Carolina, (the "Liberty Street Property") by quitclaim deed to her brother, Mr. Powell, just 15 days prior to the Petition Date.

As a result, on September 29, 2014, the Trustee filed an adversary proceeding[3] against Mr. Powell to avoid the transfer of the Debtor's interest in the Liberty Street Property pursuant to 11 U.S.C. §§ 549 and 550.  The adversary proceeding was voluntarily dismissed without

---

[1] The first § 341 meeting was held on July 18, 2014 and was continued to September 12, 2014, to October 24, 2014, to November 21, 2014, to December 5, 2014, and finally concluded on January 16, 2015.
[2] The audit did not include an examination of real estate records.
[3] Two adversary proceedings were filed in this case, one for recovery of property based on fraudulent transfer against Mr. Powell, and one for denial of discharge against the Debtor.

prejudice after the Trustee determined that the Debtor's interest in the Liberty Street Property was subject to a preexisting judgment lien of Edward and Mercedes Miller in an amount in excess of $125,000.00.

Thus, there is no dispute that the Debtor made multiple false statements and omissions on her bankruptcy petition and schedules, including the following:

- The Debtor did not disclose that on May 28, 2014, 15 days prior to the filing of the petition in the case, the Debtor and her husband signed a quitclaim deed transferring their ownership interests in the Liberty Street Property to Mr. Powell.

- The Debtor did not disclose her membership in an investment club, "Dollars, Sense and Growth Investment," which provided partnership K-1 tax returns to the Debtor for tax years 2012 and 2013 and had a value of approximately $2,000.00.

- The Debtor did not disclose her affiliation with GQM, a limited liability corporation organized in North Carolina in May, 2005. The Debtor was listed as the registered agent and signed the Articles of Organization as the President [member organizer]. This LLC was dissolved in August 2010.

- The Debtor did not disclose three savings accounts, two with PNC and one with Wells Fargo. The two savings accounts with PNC Bank had $0 balances at the petition date. The Wells Fargo savings account, which was solely in the name of the Debtor, had a balance of $192.51 on June 1, 2014. The account showed a $200.00 withdrawal on June 20, 2014, effectively closing out the account, eight days after filing her petition.

At the continued § 341 meeting on September 12, 2014, the Debtor and her counsel, Mr. Meadows, had the following exchange with the Trustee:

Mr. Burns:  Did you list everything that you own or have any interest in in your petition?

Ms. Jeffries:  Yes.

Mr. Burns:  Did you…

Mr. Meadows:  … We want to amend one thing. She does have some kind of interest in a investment club…

Mr. Burns:  … uh-huh.

Mr. Meadows: …Do you have any idea what it's worth?

Ms. Jeffries:  I think $2,000.

Mr. Meadows:  Okay.  We're going to amend to add that.  We don't have any documentation.  It's been over two years since she participated in it.

Mr. Meadows:  Well, that… that recently came to light, and we'll amend to add that investment club.

Ms. Jeffries:  Uh-huh.

Mr. Meadows:  Other than that, are there any other assets that we didn't list that you need to tell the trustee about now?

Ms. Jeffries:  No.

Debtor's 341 Meeting, 4:2-5:11, Sept. 12, 2014.

Also during the § 341 meeting on September 12, 2014, the Trustee and counsel for the BA questioned the Debtor about the Liberty Street Property. The Debtor maintained that her name was on the original deed to the Liberty Street Property as an accommodation to her brother, and that she did not have any interest in that property.  The Debtor testified at the hearing that the transfer of her interest on May 28, 2014 was also an accommodation to her brother to allow him to sell the real property.

At the trial, the Court heard the testimony of the Trustee, the Debtor, and Mr. Powell. When the Debtor testified, she did not appear forthright or credible.  Her answers were short, abrupt, and repeatedly incomplete and misleading. Again, she asserted that she did not disclose the transfer of her interest in the Liberty Street Property because she did not consider herself an owner of the property, and yet she admitted that her intent in signing the document was to transfer her interest in the property to Mr. Powell so he could sell it. She gave no explanation as to the timing of the transfer other than that she merely "obeyed her brother's directions to go to a real estate office and sign some papers." Def.'s Pretrial Br. 2. She gave no explanation as to why, if she did not consider herself an owner of the property, she met jointly with her brother and

counsel to discuss the judgment which had attached to it.  At times, she implied that she did not

comprehend that the document that she signed was a deed. She insisted on referring to the

quitclaim deed as a "paper" rather than a deed and in doing so, appeared disingenuous,

particularly after she admitted that she knew that the "paper" was a deed.  The Debtor clearly

testified that she understood what a deed was and further demonstrated her understanding of the

significance of a deed when she described that she and her husband were having an issue with

the recording of an allegedly false deed to the real property they currently use as their residence.[4]

        Further findings of fact are incorporated into the discussion below.

**DISCUSSION**

**Section 727(a)(2)(A)**

        For denial of Debtor's discharge pursuant to § 727(a)(2)(A), the Plaintiffs must establish

that the debtor (1) transferred or concealed, (2) his property, (3) with the intent to hinder, delay

or defraud a creditor, (4) within one year before filing the petition.  Saslow v. Michael (In re

Michael), 452 B.R. 908, 916 (Bankr. M.D.N.C. 2011).  The only element at issue is the intent to

hinder, delay or defraud a creditor; the Debtor transferred her interest in the Liberty Street

Property within one year (15 days) prior to the filing of her petition.[5]  Courts look to

circumstantial evidence and have identified "badges of fraud" that indicate fraudulent intent:

---

[4] The Debtor testified that she and her husband "owned" their residence, but an allegedly fraudulent deed transferring the property to Mercedes and Edward Miller (who separately obtained a judgment against the Debtor) was recorded some years ago.  At the conclusion of her testimony, when given the opportunity to describe the circumstances of her bankruptcy in her own words, the Debtor described that she felt as though she had been singled out because of the judgment, that the Millers had acted wrongly, and that the actions being taken in her case were to get money for the Millers.  Notably, the Debtor chose to disclose neither her residence, in which she appears to assert an equitable interest, nor the Liberty Street Property, for which she had legal title.

[5] Under 11 U.S.C. § 101(54), "The term 'transfer' means:

. . .

(D) each mode, direct or indirect, absolute or conditional, voluntary or involuntary, of disposing of or parting with—
        (i) property; or
        (ii) an interest in property."

- family, friendship or insider relationships between the parties;

- the debtor's retention of possession, benefit or use of the property in question;

- the lack of or inadequacy of consideration for the transfer;

- the debtor's financial condition before and after the transfer;

- the existence or cumulative effect of the pattern or series of transactions or course of conduct after the incurring of debt, onset of financial difficulties, or pendency or threat of suits by creditors;

- the general chronology of the events and transactions under inquiry;

- the debtor's attempt to keep the transfer a secret; and

- the proximity of the transfer to the debtor's filing bankruptcy.

Id. at 917. The presence of only one badge of fraud may provide a basis for a finding of fraudulent intent. See Id. Also, it is irrelevant whether or not the transfer of an interest in property actually injures a creditor. Vill. of San Jose v. McWilliams (In re McWilliams), 284 F.3d 785, 793 (7th Cir. 2002).

In the Debtor's case, at least six of the eight badges of fraud are present:

- the Debtor transferred her interest in the Liberty Street Property to her brother;

- there was no consideration for the transfer;

- the Debtor had a substantial judgment against her; the Debtor's financial condition was continuing to deteriorate after the transfer as she filed for bankruptcy within 15 days of signing the quitclaim deed;

- the chronology of events whereby the Debtor and her brother met with her bankruptcy counsel regarding the judgment against her, she transferred her interest in the Liberty Street Property to her brother, and she filed for bankruptcy within a period of approximately two months;

- the Debtor's lack of disclosure of the transfer on her Statement of Financial Affairs, as it was only through the Trustee's title search that this property transfer was discovered; and

- the proximity of the transfer to the filing of bankruptcy was 15 days.

8

After careful consideration of the entire record in this case, the Court finds that the evidence presented at trial, including the presence of numerous badges of fraud, supports a finding that the Debtor transferred her interest in the Liberty Street Property with intent to hinder, delay, or defraud a creditor. As a result, the Debtor can be denied discharge pursuant to § 727(a)(2)(A), and the Court need not go further in considering alternate grounds. However, Plaintiffs have additionally raised § 727(a)(4)(A) as grounds for denial of discharge, and the Court agrees that the Plaintiffs have met their burden of proof with regard to this claim.

**Section 727(a)(4)(A)**

Section 727(a)(4)(A) provides that a court should not grant a debtor's discharge if "the debtor knowingly and fraudulently, in or in connection with the case . . . made a false oath or account." 11 U.S.C. § 727(a)(4)(A).  A false statement or omission in a debtor's schedules or statement of financial affairs qualifies as a false oath.  Nationsbank, N.A. v. Jaray (In re Jaray), 114 F.3d 1176, 1176 (4th Cir. 1997) (per curiam) (affirming a denial of discharge predicated on false statements and omissions from the debtor's schedules); Williamson v. Fireman's Fund Ins. Co., 828 F.2d 249, 251 n.2 (4th Cir. 1987) (finding that false statements and omissions in filing the debtor's statement of financial affairs qualifies as an oath).

The purpose of § 727(a)(4)(A) is to ensure that accurate and complete information is supplied for those interested in the administration of the bankruptcy estate, without the need for the trustee or other interested parties to ferret out the true facts in examinations or investigations. LaVangie v. Mazzola (In re Mazzola), 4 B.R. 179, 181-82 (Bankr. D. Mass. 1980); see Northen v. Mack (In re Mack), Case No. 07-80496, Adv. No. 07-9024, 2009 WL 2998975, at *3 (Bankr. M.D.N.C. Sept. 18, 2009).  A debtor has an affirmative duty to list all assets and liabilities and to fully answer the questions in the petition.  Mazzola, 4 B.R. at 183;  see Sigmon v. Belk (In re

Belk), 509 B.R. 513, 518 (Bankr. W.D.N.C. 2014) ("Filing bankruptcy is a serious undertaking and these are serious duties.").  "[N]either the trustee nor the creditors should be required to engage in a laborious tug-of-war to drag the simple truth into the glare of daylight."  The Cadle Co. v. Watkins (In re Watkins), Case No. 05-12066C-7G, Adv. No. 06-02001, 2007 WL 1459306, at *2 (Bankr. M.D.N.C. May 15, 2007) (citing In re Tully, 818 F.2d 106, 110 (1st Cir. 1987)).  In Kaler v. McLaren (In re McLaren), 236 B.R. 882 (Bankr. D.N.D. 1999), the court explained the duty of full and truthful disclosure by a debtor in his bankruptcy petition:

> [C]ompleteness and accuracy in a debtor's disclosure of her ownership interests in property, whatever be their nature – is paramount.  In matters such as this, it is of no small consequence that it is the *debtor* who chooses to seek the shelter of bankruptcy.  That choice, while freeing the debtor, temporarily at least, from the inconveniences of debt, is accompanied by its own particular demand which, while small indeed, will nonetheless, and at pains, be exacted: that price, at its bare minimum, is the debtor's utmost honesty and candor in all dealings with the Court.

Id. at 894.  Certainly, a trustee and creditors should not be required to expend resources to obtain information that should be readily available by full disclosure in the schedules and statement of financial affairs.[6]

For the court to deny a debtor a discharge under § 727(a)(4)(A), the plaintiff must show that: (1) the debtor made a statement under oath; (2) the statement was false; (3) the debtor knew the statement was false; (4) the debtor made the statement with fraudulent intent; and (5) the statement related materially to the bankruptcy case.  Beaubouef v. Beaubouef (Matter of Beaubouef), 966 F.2d 174, 178 (5th Cir. 1992).  The plaintiff bears the burden of proving that the discharge should be denied under § 727(a) and must meet this burden by a preponderance of the

---

[6] Here, the adversary proceeding filed by the Trustee against Mr. Powell to avoid a fraudulent transfer where there was a large preexisting judgment lien is an example of the waste of resources as a direct consequence of the Debtor's concealment of the transfer of her interest in the Liberty Street Property.

evidence as to all five elements. FED. R. BANKR. P. 4005; Farouki v. Emirates Bank Intern., Ltd., 14 F.3d 244, 249 (4th Cir. 1994).

In this district, discharges in bankruptcy have been denied due to a debtor's failure to disclose or truthfully disclose all of the information requested in the bankruptcy schedules or statement of financial affairs.  In a recent Middle District of North Carolina case, a debtor was denied his discharge on the grounds of making a false oath or account for his substantial undervaluation of one of his disclosed assets.  See Robinson v. Worley (In re Worley), 517 B.R. 593 (Bankr. M.D.N.C. 2014), aff'd No. 1:14cv1083, 2015 WL 5793665 (M.D.N.C. September 30, 2015).  In the opinion affirming the bankruptcy court's decision, the district court noted that the debtor never amended his schedules to reflect a more realistic appraisal of the asset in question. Id. at *7.  The court went on to state that, "[t]hus, the Bankruptcy Court did not err in denying discharge based on [the debtor's] undervaluation of a single asset on his bankruptcy schedules." Id.

In another case in this district, the bankruptcy court discussed the various omissions and false statements in the debtors' petition and statement of financial affairs regarding their exempt assets, sale of vehicles in prior years, and discrepancies in income reported. Ferguson v. Pepper (In re Pepper), Case No. 10-51103 C-7W, Adv. No. 10-06058, 2011 WL 5288737, at *1 (Bankr. M.D.N.C. Nov. 2, 2011).  The debtors alleged in their answer to the trustee's complaint that the omissions and misstatements were either immaterial or the result of "simple oversight." Id.  In denying the debtors their discharge, the bankruptcy court stated, "These material inaccuracies and omissions were accompanied by a panoply of minor deficiencies, which cumulatively amount to a material misstatement." Id. at *2.

11

In yet another case, <u>West v. Barnette (In re Barnette)</u>, Case No. 00-80450C-7D, Adv. No. 01-9002, 2002 WL 1544472 (Bankr. M.D.N.C. July 8, 2002), the debtors failed to list their ownership interests in stock in various corporations and as well as three personal assets in their petition.  The court made it clear that even if the omission of corporate interests was not at issue, the failure to schedule the three items of personalty[7] was sufficient to deny a discharge in the debtors' case.  <u>Id</u>. at *3.

In the present case, the Plaintiffs contend that the Debtor should be denied a discharge under § 727(a)(4)(A) for her failure to disclose that she conveyed an interest the Liberty Street Property to her brother 15 days prior to her bankruptcy filing, in combination with her other omissions and false statements.  While the property transfer itself already operates to preclude the Debtor from discharge pursuant to § 727(a)(2)(A), the Plaintiffs also take issue with the degree of falsity with which the Debtor has repeatedly conducted herself in this case.  Concealment of the property transfer is but one of several false oaths that collectively suggest that the Debtor has been playing fast and loose with her discharge.

The Debtor concedes that elements (1), (2), and (5) of § 727(a)(4)(A) are "present in this case and cannot be disproved."  Def.'s Pretrial Br. 2.  The third and fourth elements, whether the Debtor knew her statements and omissions were false and whether such statements and omissions were made with the requisite intent, are largely matters of credibility and demeanor when testifying at her objection to discharge hearing.  <u>See</u> <u>Williamson</u>, 828 F.2d at 252.

As to the third element, that the Debtor knowingly made false statements and omissions in furtherance of her case, the Debtor's background is relevant in demonstrating her level of sophistication.  The Debtor has a college degree and has worked at various positions during her

---

[7] The items of personalty were a "valuable ring," a golf cart, and a horse.

12

adult life, including as a sales associate at Macy's and as an office manager for GQM, an entertainment booking company. Also, the Debtor participated in an investment club partnership. She is sufficiently educated and sophisticated to understand the concepts of a deed and transfer of a property interest. The Court believes that the Debtor understood the "paper" she signed at Freeman Commercial Realty transferred a legal interest in the Liberty Street Property to her brother. The Debtor's testimony that she and her husband met with a realtor and notary at Freeman Commercial Reality who instructed her to "just sign this paper" with no further explanation is not credible and is inconsistent with Mr. Powell's testimony. Even assuming the Debtor did not have a financial interest in the Liberty Street Property and held title as an accommodation to her brother, the execution of the deed was still a transfer of a property interest required to be disclosed under question 10 in the Debtor's SOFA. See Armstrong v. Lunday (In re Lunday), 100 B.R. 502, 508 (Bankr. D.N.D. 1989) ("A debtor has an uncompromising duty to disclose *whatever* ownership interest he holds in property.") (emphasis added). The Debtor signed the deed to the Liberty Street Property 15 days prior to the Petition Date transferring legal title to her brother but answered "None" to the question on the SOFA regarding transfers of property. The Court believes that the Debtor understood this question and deliberately answered it falsely.

The next element of a § 727(a)(4)(A) objection to discharge concerns the Debtor's fraudulent intent in making the false oath. "Direct evidence of fraudulent intent is not required; rather, it is sufficient to prove by circumstantial evidence either a pattern of concealment and errors or other conduct that suggests reckless indifference to the truth." Neugebauer v. Senese (In re Senese), 245 B.R. 565, 575 (Bankr. N.D. Ill. 2000). See Angell v. Williams (In re Williams), Case No. 08-02284, Adv. No. 08-00188, 2010 WL 364459, at *9 (Bankr. E.D.N.C.

13

Jan. 27, 2010) (citing <u>Kremen v. Slattery (In re Slattery)</u>, 333 B.R. 340, 346 (Bankr. D.Md.

2005)) (finding that a pattern of omissions and inaccuracies on a debtor's sworn schedules

indicates a reckless disregard for the truth).

      As stated previously, it is undisputed that the Debtor made multiple false statements and

omissions on her schedules and SOFA. The Debtor additionally withheld or attempted to mislead

the Court on the following occasions at trial:

- The Debtor answered the BA's questions regarding the trajectory of her household finances with "we've done okay," only to be confronted with her own answers to interrogatories evidencing the contrary, including checks written in 2013 and 2014 without sufficient funds.

- The Debtor testified that she borrowed $2,000.00 from her sister to afford her bankruptcy fees, and in response to the BA's question, "You still owe her that money, right?" the Debtor responded "Yes." Only later when responding to her own counsel did the Debtor state that she merely had an oral agreement, not a promissory note, to repay her sister. In response to the question, "Do you feel an obligation to repay her?" the Debtor finally admitted that her sister had passed away.

- In addressing the Debtor's relationship to GQM, she testified that she simply worked in the office and had no ownership interest. In contrast, the Articles of Incorporation for GQM show that the Debtor signed as "President," was designated registered agent, and was one of three members alongside Mr. Powell and Marcene Hairston. Pls.' Ex. 10, supp. doc.

- The Debtor testified that her first meeting with counsel was in May 2014, and was with someone other than her attorney. Her brother later testified that he and the Debtor met with her counsel about the judgment against the Debtor in April 2014. The Debtor did not testify as to any such meeting, despite having been directly asked about her first meeting with bankruptcy counsel.

- The Debtor testified that her brother knew nothing of her finances in response to the BA's questions, though later testimony unearthed that Mr. Powell accompanied the Debtor to her first meeting with bankruptcy counsel.

- The Debtor clearly spoke of the two unscheduled, zero-balance PNC savings accounts, but "could not remember" the balance of the Wells Fargo savings account that she effectively closed out eight days after filing her petition by withdrawing $200.00.

14

The Debtor's demeanor and the tenor of her testimony echo the description of a debtor's testimony in a case where discharge was denied pursuant to §§ 727(a)(4)(A) and (a)(2)(A), mainly due to concealment of stock in a construction company.  In United Bank v. Fedczak (In re Fedczak), No. 05-3418, Adv. Proc. No. 05-195, 2007 WL 1670110 (Bankr. N.D.W.Va. June 6, 2007), the debtor testified at his § 341 meeting that "Martha Frame . . . was an elderly lady and I sort of ran things for her."  Id. at *2.  He testified that she was the owner of a company for which he was the President.  Id.  The debtor then testified that he had no idea what happened to any of the assets of the company.  Id. at *3.  Later it was discovered that Martha Frame was the debtor's mother, that she died nine years prior to the filing of the debtor's bankruptcy, and that he worked for the company up to one year prior to filing for bankruptcy.  Id. at *4.  This less-than-forthcoming testimony by the debtor in this case led the bankruptcy court to conclude:

> [T]he Court is convinced that the Debtor knew that he had an ownership interest in WGC's stock at the time he filed bankruptcy, and at the time he testified at his meeting of creditors.  The Debtor purposefully chose, however, to represent that he had no interest in WGC's stock on Schedule B and at this meeting of creditors.

Id. at *7.

The Court interprets the Debtor's comparable lack of candor and withholding of information at trial as a reckless disregard for the truth.  Reckless disregard means not caring whether some representation is true or false, and has been treated as the functional equivalent of fraud for the purposes of § 727(a)(4)(A).  Rupp v. Biorge (In re Biorge), 536 B.R. 24, 31 (Bankr. D. Utah 2015).  This requisite intent necessary for the denial of discharge under § 727(a)(4)(A) may be inferred from circumstantial evidence, such as a pattern of nondisclosure and concealment.  Giansante & Cobb, LLC v. Singh (In re Singh), 433 B.R. 139, 159 (Bankr. E.D.Pa. 2010).  See Williamson, 828 F.2d at 252 (citing Farmers Co-operative Association v.

15

Strunk, 671 F.2d 391, 395 (10th Cir. 1982) ("Fraudulent intent . . . may be established by …

inferences drawn from a course of conduct.")).

    Furthermore, when the false statements and omissions are contained in the schedules and

statements of the bankruptcy petition, the debtor has a "continuing duty" to assure the accuracy

of such schedules and statements, i.e. "the proper method of correction is a formal amendment of

the schedules."  Searles v. Riley (In re Searles), 317 B.R. 368, 377 (B.A.P. 9th Cir. 2004), aff'd

212 F. App'x 589 (9th Cir. 2006).   In Cho v. Park (In re Park), 480 B.R. 627 (Bankr. D.Md.

2012), the court stated:

> Because Mr. Park did not simply make one false statement, or even two, but
> rather engaged in a pattern of omissions and inaccuracies, there is sufficient
> recklessness for the Court to infer fraudulent intent. Mr. Park exacerbated his
> misstatements by making no effort to correct them and amend his schedules and
> statement.

Id. at 638 (citation omitted).

    Here, the Debtor's omissions and misstatements on her schedules and SOFA, her

testimony at the 341 hearings, her testimony and demeanor at trial, and her failure to amend her

schedules and SOFA[8] are reminiscent of Park, and her overall conduct stands in stark contrast to

the assessment of debtors in a recent case by the bankruptcy court in the Eastern District of

North Carolina, "[T]he [debtors] promptly amended their schedules as soon as they realized the

omission, and have always been forthcoming in their answers to interrogatories, sworn

questioning and depositions . . ."  McClain v. Parker (In re Parker), 531 B.R. 103, 110 (Bankr.

E.D.N.C. 2015) (finding the complaining creditor failed to satisfy his burden of proving the

---

[8] At one point in the closing arguments at trial, Debtor's counsel took responsibility for the lack of amendment to the schedules and SOFA. The Court is at a complete loss to understand how, if nothing else, during the course of preparation for trial - including the drafting of pretrial briefs in which counsel would have reviewed both the pertinent case law and the record in this case - such an oversight could have occurred and not been rectified prior to the date of the trial. However, the Court notes that at trial, the Debtor appeared completely indifferent as to whether her schedules and SOFA had been amended.

debtors acted with fraudulent intent).  As a result, the Court concludes that the Debtor's pattern of misstatements and omissions on her schedules and SOFA, coupled with a continuing pattern of misstatements and omissions throughout the case, reflect her reckless indifference to the truth in making the false oaths on her schedules and statements.

The materiality of the false statements and omissions is the last element in the determination of whether a discharge should be denied under § 727(a)(4)(A).  Although this element was unequivocally conceded in the Debtor's pretrial brief, her counsel indirectly raised this element in his arguments at the trial.  False statements and omissions are related to material matters in that they concerned the existence and disposition of the Debtor's property.  See Williamson, 828 F.2d at 252 (citing Chalik v. Moorefield (In re Chalik), 748 F.2d 616, 618 (11th Cir. 1984) ("The subject matter of a false oath is 'material' and thus sufficient to bar discharge if it bears a relationship to the debtor's business transactions or estate, or concerns the discovery of assets or business dealings, or the existence and disposition of property.")).  The dollar amounts of the undisclosed bank accounts are minimal,[9] and the lack of disclosure of the Debtor's relationship with GQM is perhaps understandable as GQM appeared to have ceased operations in or around 2007.  However, the Debtor also failed to list an interest in an investment club with a value of approximately $2,000.00. It is the culmination of all of the various omissions and the nondisclosure of the transfer of a property interest within a few days of her Petition Date that results in a pattern of conduct and intention that satisfies the elements of § 727(a)(4)(A) and additionally supports the Court's determination to deny the Debtor her discharge.

---

[9] The bank balances of the undisclosed accounts appear to be $0 for both of the PNC accounts as of the petition date and less than $200 for the Wells Fargo savings account as of the petition date.  But see Chalik at 618.  ("The recalcitrant debtor may not escape a section 727(a)(4)(A) denial of discharge by asserting that the admittedly omitted or falsely stated information concerned a worthless business relationship or holding; such a defense is specious.")

Veracity and transparency are of utmost importance in completing schedules and statements in the debtor's petition.  A debtor simply must answer the questions in the statement of financial affairs candidly.  The most troubling of all aspects of this case is the failure of the Debtor to answer question 10 of her Statement of Financial Affairs truthfully with regard to the transfer of her interest in the Liberty Street Property to Mr. Powell, just days prior to the Petition Date, and after she and Mr. Powell met with Debtor's counsel to discuss the judgment.  The Court does not believe that the Debtor did not realize the significance of signing a quitclaim deed for the Liberty Street Property.  This belief is not "mere skepticism"[10] of the Debtor's testimony, but a result of a determination that the plaintiffs have carried their burden of proof with additional evidence of record.

<u>CONCLUSION</u>

Based upon the foregoing, the Court finds that the Bankruptcy Administrator and Trustee have met their burden under both § 727(a)(2)(A) and § 727(a)(4)(A).  The Court shall enter a separate judgment consistent with this memorandum opinion denying the Debtor's discharge.

**END OF DOCUMENT**

---

[10] "Mere skepticism of debtor's testimony is not necessarily the same as a finding that plaintiff has carried its burden of proof [in a denial of discharge action]."  <u>Wachovia Bank, N.A. v. Voccia (In re Voccia)</u>, 477 B.R. 625, 635 (Bankr. E.D.Va. 2011).